UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ELIZABETH SNOW,**

    *Plaintiff,*

    v.                     Case No.:

**EQUIFAX INFORMATION
SERVICES, LLC,
SINGING RIVER HEALTH SYSTEM,**
*and*
**SOUTHERN FINANCIAL SYSTEMS, INC.,**

    *Defendants.*
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, ELIZABETH SNOW ("**Ms. Snow**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, EQUIFAX INFORMATION SERVICES, LLC ("**Equifax**"), SINGING RIVER HEALTH SYSTEM ("**Singing River**"), and SOUTHERN FINANCIAL SYSTEMS, INC. ("**Southern Financial**"), (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Snow against Equifax and Southern Financial for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Singing River only for violations of the Florida Consumer Collection Practices Act, § 559.77(1), Fla. Stat., *et seq.* ("FCCPA"), and against Southern Financial

only for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under 28 U.S.C. § 1331, as the FCRA and the FDCPA are federal statutes.

3.      This Court has supplemental jurisdiction for Plaintiff's State law FCCPA claims under 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

### Ms. Snow

6.      Ms. Snow is a natural person residing in the City of Riverview, Hillsborough County, Florida.

7.      Ms. Snow is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8).

### Equifax

8.      Equifax is a Georgia liability company with a principal business address of 1550 Peachtree St., NW, Atlanta, GA 30309.

9.      Equifax is registered to conduct business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

10.     Equifax is a "consumer reporting agency" ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## Singing River

11.     Singing River is a Mississippi nonprofit corporation with a principal business address of 3109 Bienville Blvd., Ocean Springs, MS 39564.

12.     Singing River's Mississippi registered agent is Gordon Roundtree, 2101 Highway 90, Gautier, MS 39553.

## Southern Financial Systems, Inc.

13.     Southern Financial is a Mississippi corporation with a principal business address of 2603 Oak Grove Rd., Suite B, Hattiesburg, MS 39402.

14.     Southern Financials' Mississippi registered agent is Donne Kimberly Farrar, 2603 Oak Grove Rd., Suite B, Hattiesburg, MS 39402.

15.     Southern Financial is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6) and the FCCPA, § 559.55(7), Fla. Stat, in that it uses an

instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

16.    Sometime in or around 2022, Ms. Snow sought medical treatment at Singing River, a medical services provider.

17.    By July 2022, Singing River alleged that Ms. Snow owed it $1,095 (the "Debt").

18.    The Debt resulted from personal and household purposes, specifically for medical treatment and therefore meets the definition of "debt," as defined by the FDPCA, 15 U.S.C. § 1692a(5) and the FCCPA, § 559.55(6), Fla. Stat.

19.    In November 2023, Singing River hired Southern Financial to collect the Debt on its behalf.

20.    Sometime after November 2023, Southern Financial started reporting the Debt to Equifax.

21.    Ms. Snow was a resident of Hillsborough County, Florida during the time Southern Financial reported the Debt to Equifax.

22.    In December 2024, Ms. Snow filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in the Middle District of Florida.

23.     In December 2024, Singing River received a Notice of a Chapter 7 bankruptcy petition made by Ms. Snow, and therefore was on notice of the automatic stay provided by her Chapter 7 bankruptcy petition.

24.     Thus, Singing River was aware as of December 2024 that any collection efforts against Ms. Snow were subject to an automatic stay, and Singing River was aware it was required to inform its agent, Southern Financial, to cease collection activity.

25.     Singing River was also aware that Ms. Snow was a Florida resident as the petition was filed in the Middle District of Florida and contained her Hillsborough County address.

26.     Despite receiving the notice of Ms. Snow's petition for bankruptcy, Singing River did not instruct Southern Financial to cease collection efforts from Ms. Snow.

27.     In March 2025, Ms. Snow received a discharge of her unsecured debts from the United States Bankruptcy Court, Middle District of Florida, Tampa Division.

28.     Singing River was notified in March 2025 that Ms. Snow had been granted a discharge of her unsecured debts, which includes the $1,075 Singing River had placed with Southern Financial for collection.

29.     Despite this additional notification, Singing River still did not instruct Southern Financial to cease collecting the Debt.

30.     Singing River knew that Southern Financial would continue to collect the Debt from Ms. Snow unless it instructed Southern Financial otherwise but it did nothing.

31.     As a result, Southern Financial continued to report to Equifax that Ms. Snow owed $1,095 to Singing River, monthly.

32.    Ms. Snow did not re-affirm any unsecured debts or otherwise engage in any action which could be construed as a reaffirmation of unsecured debt.

33.    Equifax, through its public records vendor, Lexis Nexis, obtains information on a daily basis about consumers who file for bankruptcy.

34.    Equifax likewise receives information from its public records vendor when the status of a bankruptcy cases changes, i.e., when the consumer receives a discharge of debts.

35.    Within a matter of days of the event occurring, Equifax received information from its public records vendor that Ms. Snow had received a discharge of debts.

36.    Despite this, Equifax continued to include the Southern Financial tradeline in reports sold about Ms. Snow, even though it knew (1) the debt existed well before Ms. Snow's bankruptcy petition, (2) the debt was unsecured, and (3) Ms. Snow had received a discharge of her unsecured debts.

37.    Equifax requires its furnishers to adhere to Metro 2 reporting guidelines.

38.    Metro 2 guidelines require a data furnisher to indicate any idiosyncratic information, such as if the consumer elects to reaffirm the debt and not seek its discharge as part of bankruptcy proceedings.

39.    Southern Financial did not report the account with a Metro 2 code of "R" (shorthand for "reaffirmation of debt") in the Consumer Information Indicator section of its tradeline, which is reported in Field 38 of the Base Segment, Field 11 of the J1 Segment, and Field 11 of the J2 Segment.

40.     Thus, by March 2025, Equifax was aware from data it received from its public records vendor on Ms. Snow that: (1) Ms. Snow had received a discharge of debt pursuant to Chapter 7, (2) Southern Financial reported Ms. Snow had a $1,095 balance due to Singing River, (3) Southern Financial did not report Ms. Snow had re-affirmed the Debt, nor did Southern Financial report any other code or indicator to imply the debt was still owed by her.

### Ms. Snow's Disputes

41.     On July 28, 2025, Ms. Snow disputed the Southern Financial tradeline to Equifax, indicating that the Debt was included in her Bankruptcy discharge.

42.     Equifax could objectively, readily and easily verify Ms. Snow had received a Chapter 7 Bankruptcy Discharge since this information had already been obtained by Equifax from its public records vendor (and was incorporated into Ms. Snow's Equifax credit file) and thus Equifax could easily and objectively verify the discharge of debt.

43.     Upon receipt of Ms. Snow's dispute, Equifax was required by the FCRA to conduct a reasonable investigation to determine whether the disputed information is inaccurate. *See* 15 U.S.C. § 1681i(a)(1)(A).

44.     However, rather than conducting an independent investigation, Equifax sent Southern Financial an Automated Consumer Dispute Verification ("ACDV") request through an automated system known as e-OSCAR.

45.     The ACDV furnished to Southern Financial contains detailed information about the consumer to whom it relates, including the consumer's current address.

46. Thus, Southern Financial was aware, on July 28, 2025 at the latest, that Ms. Snow was a resident of Florida and that it was engaged in collection activity concerning a Florida consumer, as the ACDV showed Ms. Snow's current Hillsborough County address.

47. Southern Financial was thereafter required by the FCRA to make its own reasonable investigation into the dispute. *See* 15 U.S.C. § 1681s-2(b).

48. Southern Financial made a quick, hasty investigation, and informed Equifax less than 24 hours later (on or around July 29, 2024) via its ACDV response to Equifax, that it could verify the information it had reported regarding Ms. Snow and the Debt was accurate and required no update, change, modification or deletion, and that Ms. Snow still owed $1,095 to Singing River.

49. Southern Financial could have easily and objectively verified the Debt it was reporting had been discharged through bankruptcy as bankruptcy petitions and discharges are public record, and Southern Financial had Ms. Snow's Social Security number, and Ms. Snow provided the relevant case information in the text of her dispute.

50. Southern Financial made no other modification or deletion, nor did it update its reporting to reflect the information was disputed by the consumer.

51. Southern Financial failed to conduct a reasonable investigation into Ms. Snow's dispute, as any reasonable investigation would have determined that the Debt was not owed as it had been discharged through bankruptcy.

52.    Upon receipt of the ACDV response from Southern Financial, Equifax utilized a second automated system to verify the basic personal information contained in the ACDV, such as name and Social Security number, against Equifax's own records.

53.    Equifax then accepted the ACDV response from Southern Financial and continued to report the tradeline.

54.    Equifax's complete reliance on Southern Financial to verify disputed information without any additional investigation by the CRA is inherently unreasonable, especially when a consumer states an unsecured debt was discharged in her bankruptcy petition and a creditor claims otherwise, and the CRA has evidence of the bankruptcy discharge being granted.

55.    Equifax's dispute resolution systems are heavily tilted in favor of its corporate customers, from whom it receives revenue monthly.

56.    In August 2025, Southern Financial re-reported its tradeline to Equifax, thus re-alleging the $1,095 was owed and engaged in new collection communications about the Debt and about a consumer it (1) knew resided in Florida and (2) had received a discharge of her unsecured debts in March 2025.

57.    On September 3, 2025, Ms. Snow disputed the Southern Financial tradeline again to Equifax and reiterated the debt had been discharged through bankruptcy.

58.    Equifax sent Southern Financial an ACDV asking it to make a reasonable investigation into the Debt.

59.    Equifax's automated systems include any documents provided by the consumer as attachments to the ACDV; thus, Southern Financial received a copy of the Discharge of Debt granted by the Middle District of Florida.

60.    Despite Ms. Snow providing documents from a United States Federal District Court verifying she had received a discharge of her unsecured debts in March 2025, on information and belief, Southern Financial responded to the ACDV that it had again verified its reporting as correct and that the $1,095 balance should continue to report as owed.

61.    However, the Southern Financial tradeline was shortly thereafter deleted.

62.    On information and belief, Equifax deleted the tradeline based on the information it received from Ms. Snow, "overriding" the verification of debt received from Southern Financial.

63.    Records from Equifax show it sold a considerable number of reports concerning Ms. Snow after December 2024 and before September 2025; these reports all included the erroneous Southern Financial tradeline alleging Ms. Snow still had unresolved, unpaid collection accounts after receiving a bankruptcy discharge.

64.    Almost every commonly used credit scoring methodology in the United States, including scores produced by FICO, consider a bankruptcy discharge to be adverse.

65.    FICO and other scoring models consider the combination of a bankruptcy discharge *and* the presence of delinquent debt post-discharge to be extremely adverse, since, as common-sense indicates, a person who received a "fresh start" from a Chapter 7

Petition and then quickly accumulates "new" delinquent debt is at extremely high risk of default on any new credit lines extended.

66.     Thus, the impact on Ms. Snow's credit scores due to erroneous reporting by Southern Financial on behalf of Singing River, as well as by Equifax, was catastrophic, as Equifax reported a bankruptcy discharge and then at least one "new" collection or charge-off afterward.

67.     As the result of the actions of the Defendants, Ms. Snow has been denied credit she was otherwise qualified to obtain or extended credit on less-favorable terms. She has also lost one of the primary benefits of bankruptcy -- its "fresh start."

68.     Ms. Snow has suffered severe emotional distress at having been denied a mortgage which she should have been qualified to obtain.

69.     Ms. Snow has also suffered damage to her reputation, has spent time and money to correct her file and force Defendants to comply with their statutory obligations, and has spent time and money procuring counsel.

70.     Ms. Snow has hired the aforementioned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

**COUNT I**
**SOUTHERN FINANCIAL'S WILLFUL VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681s-2(b)**

71.     Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

72.    Southern Financial violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation into Ms. Snow's disputes after receiving notice of the disputes from a CRA, Equifax, in July 2025 and September 2025.

73.    Any reasonable investigation would have determined that the Debt was discharged in Ms. Snow's March 2025 Chapter 7 Bankruptcy, and thus no balance remained owed by her personally.

74.    Southern Financial also failed to conduct a reasonable investigation into Ms. Snow's dispute as it did not update or modify its reporting to indicate the data was disputed by Ms. Snow.

75.    Southern Financial's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Snow.

76.    Southern Financial is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Snow's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorneys' fees, and costs.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Southern Financial for:

a.    The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT II**
**SOUTHERN FINANCIAL'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681s-2(b)**

77.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

78.    Southern Financial owed Ms. Snow a legal duty to conduct a reasonable investigation into Ms. Snow's disputes upon receiving notice from Equifax.

79.    Southern Financial breached this duty when it failed to conduct a reasonable investigation into Ms. Snow's disputes after receiving notice of the dispute from a CRA, Equifax, in March 2025 and September 2025, as any reasonable investigation would have determined that the Debt was discharged in Ms. Snow's March 2025 Chapter 7 Bankruptcy, and thus no balance remained owed by her personally.

80.    Southern Financial also breached this duty when it failed to conduct a reasonable investigation into Ms. Snow's dispute as it did not update or modify its reporting to indicate the data was disputed by Ms. Snow.

81.    Southern Financial thus violated 15 U.S.C. § 1681s-2(b), and pursuant to 15 U.S.C. § 1681o, is therefore liable for Ms. Snow's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Southern Financial for:

a.    Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

      b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

      c.      Such other relief that this Court deems just and proper.

**COUNT III**
**EQUIFAX'S WILLFUL VIOLATIONS OF THE**
**FCRA15 U.S.C. § 1681e(b)**

82.     Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

83.     Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of information in reports it sold regarding Ms. Snow, when it sold reports indicating the Debt was still due and owing and *not* discharged, despite possessing information to the contrary.

84.     Records from Equifax show it sold multiple reports to creditors, and potential creditors of Ms. Snow from March 2025 to September 2025.

85.     Equifax's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm Ms. Snow.

86.     Equifax is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Snow's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorneys' fees, and costs.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.    The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

87.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

88.    Equifax owed Ms. Snow a legal duty to follow reasonable procedures to ensure maximum possible accuracy of information in reports it sold regarding Ms. Snow.

89.    Equifax breached this duty when sold reports indicating the Debt was still due and owing and *not* discharged.

90.    Equifax's breach of this duty amounts to a negligent violation of 15 U.S.C. § 1681e(b), and as a result, Equifax is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Snow's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.    Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

**COUNT V**
**EQUIFAX'S WILLFUL VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**

91.     Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

92.     Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable reinvestigation regarding the disputed Southern Financial tradeline upon receipt of Ms. Snow's dispute in July 2025. A reasonable investigation would have concluded that past-due balance was included in Ms. Snow's March 2025 Bankruptcy discharge and, if it was to be reported at all, should report with a status of "discharged through Chapter 7 Bankruptcy."

93.     The fact Equifax was able to determine the Southern Financial tradeline should be deleted in its second investigation yet was unable to do so in its first investigation – despite having all of the same information – tends to establish its first investigation was unreasonable.

94.     Equifax's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to investigate disputes, and its policies could reasonably be foreseen to cause harm to Ms. Snow.

95.     Equifax is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Snow's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorneys' fees, and costs.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.    The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT VI
### EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

96.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

97.    Equifax owed Ms. Snow a legal duty to conduct a reasonable investigation into Ms. Snow's dispute of the Southern Financial tradeline.

98.    Equifax breached this duty when it failed to conduct a reasonable investigation into Ms. Snow's dispute after receiving notice of the dispute in July 2025, as any reasonable investigation would have determined that the Debt was discharged in Ms. Snow's March 2025 Chapter 7 Bankruptcy discharge, and thus no balance remained owed by her personally.

99.    Equifax also breached this duty when it failed to conduct a reasonable investigation into Ms. Snow's dispute as it did not update or modify its reporting to indicate the data was disputed by Ms. Snow.

100.     Equifax's breach of this duty amounts to a negligent violation of 15 U.S.C. § 1681i(a)(1)(A), and as a result, Equifax is liable to Ms. Snow, pursuant to 15 U.S.C. § 1681o, for Ms. Snow's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.    Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

### COUNT VII
### SINGING RIVER'S VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

101.     Ms. Snow adopts and incorporates Paragraphs 1 – 70 as if fully restated herein.

102.     At all times relevant, Singing River was aware Ms. Snow was a Florida resident and that it was attempting to collect and enforce a consumer debt against a Florida resident, as it was informed, in writing, on at least two occasions Ms. Snow was a Florida resident.

103.     Singing River committed a tortious act in Florida by instructing its agent, Southern Financial, to continue to collect a debt discharged in bankruptcy.

104.     Singing River violated **§ 559.72(9), Fla. Stat.**, when it instructed Southern Financial to collect the Debt when the debt was void and not due as it was discharged in a bankruptcy.

105.    Singing River violated **§ 559.72(9), Fla. Stat.**, when it asserted rights which do not exist, specifically, the right to collect the Debt from Ms. Snow, via Southern Financial, when the Debt was not legally owed pursuant to Florida law.

106.    Singing River violated **§ 559.72(9), Fla. Stat.**, when it directed Southern Financial to continue to collect the Debt from Ms. Snow after receiving notice that the Debt was discharged as part of a Bankruptcy and to cease collection of the Debt.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Singing River, for:

a.    Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief prohibiting any further violation of the FCCPA against Ms. Snow by Singing River;

d.    Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and,

e.    Such other relief that this Court deems just and proper.

### COUNT VIII
### <u>SOUTHERN FINANCIAL'S  VIOLATIONS OF THE</u>
### <u>FDCPA, 15 U.S.C. § 1692e</u>

107.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

108.    Southern Financial violated **15 U.S.C. § 1692e** when it used misleading and deceptive means to attempt to collect a debt by attempting to collect the Debt from Ms. Snow, a Florida resident, via credit reporting, by reporting to one of the largest CRAs in

the nation that a debt discharged in a Bankruptcy was actually a past-due and enforceable debt against Ms. Snow, when it was not, pursuant to Florida and Federal law. Southern Financial made reports to Equifax in August 2025, well after it received notice from Ms. Snow the debt was discharged through bankruptcy.

109.    Southern Financial's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Snow respectfully requests that this Honorable Court enter judgment against Southern Financial, for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT IX
### <u>SOUTHERN FINANCIAL'S VIOLATIONS OF THE</u>
### <u>FDCPA, 15 U.S.C. § 1692e(10)</u>

110.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

111.    Southern Financial violated **15 U.S.C. § 1692e(10)** when it used misleading and deceptive means to attempt to collect a debt by attempting to collect the Debt from Ms. Snow, a Florida resident, via credit reporting, by reporting to one of the largest CRAs in the nation that a debt discharged in a Bankruptcy was actually a past-due and enforceable debt against Ms. Snow, when it was not, pursuant to Florida and Federal law.

Southern Financial made reports to Equifax in August 2025, well after it received notice from Ms. Snow the debt was discharged through bankruptcy.

112.    Southern Financial's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Snow respectfully requests that this Honorable Court enter judgment against Southern Financial for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT X**
**SOUTHERN FINANCIAL'S VIOLATIONS OF THE**
**FDCPA, 15 U.S.C. § 1692e(8)**

113.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

114.    Southern Financial violated **15 U.S.C. § 1692e(8)** when it communicated credit information which was false, and which Southern Financial knew was false, to wit, it reported to Equifax that a debt discharged in a Bankruptcy was actually a past-due and enforceable debt against Ms. Snow, when it was not, pursuant to Florida and Federal law. Southern Financial made reports to Equifax in August 2025, well after it received notice from Ms. Snow the debt was discharged through bankruptcy.

115.    Southern Financial's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Snow respectfully requests that this Honorable Court enter judgment against Southern Financial, for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT XI
### SOUTHERN FINANCIAL'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f

116.    Ms. Snow adopts and incorporates paragraphs 1 – 70 as if fully stated herein.

117.    Southern Financial violated **15 U.S.C. § 1692f(1)** when it used unfair and unconscionable means to collect a debt, to wit, reporting an account as "owed" to Equifax when Southern Financial knew full well this would severely harm Ms. Snow's credit report and scores, and Southern Financial knew the debt had been discharged in bankruptcy. Nonetheless, Southern Financial reported the account to Equifax anyway, in an attempt to strong-arm Ms. Snow into paying a debt she categorically did not owe.

118.    Southern Financial's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Snow respectfully requests that this Honorable Court enter judgment against Southern Financial, for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Snow hereby demands a trial by jury on all issues so triable.

Respectfully submitted on September 23, 2025, by:

SERAPH LEGAL, P. A.

/s/ *James Hubbard*
James Hubbard, Esq.
Florida Bar No.: 121405
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 406)
Fax: 855-500-0705
JHubbard@seraphlegal.com
*Counsel for Plaintiff*